UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW P. VYLETEL,

                Plaintiff,                        Civil Action No. 22-12744

v.                                                Matthew F. Leitman
                                                   United States District Judge

UNIVERSITY OF MICHIGAN-DEARBORN,     David R. Grand
                                                   United States Magistrate Judge
                Defendant.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION TO DISMISS (ECF No. 10)

This is one of three cases filed in close succession in this Court in late 2022 by *pro se* plaintiff Matthew Vyletel ("Vyletel"), who, during the time in question, was a student at the University of Michigan ("UM"). All three cases involve the same operative facts – Vyletel's 2019 dismissal from a UM student automotive team and his ban from certain UM facilities. First was *Vyletel v. University of Michigan*, Case No. 22-12485 ("*Vyletel I*"), which Vyletel filed on October 17, 2022.[1] Next, on November 14, 2022, Vyletel filed the instant case, *Vyletel v. University of Michigan-Dearborn*, Case No. 22-12744 ("*Vyletel II*"). Finally, on December 19, 2022, Vyletel commenced a third action, *Vyletel v. the University*

---

[1] Vyletel also named as defendants the Regents of the University of Michigan. However, as the Court explained in a prior decision in that case, the University of Michigan and its Regents "are one and the same, as the 1963 Michigan Constitution, Article VIII, § 5 established the Regents of the University of Michigan as the body corporate of the University of Michigan." (*Vyletel I*, ECF No. 32, PageID.321 n.1).

of Michigan-Dearborn, Case No. 22-13067 ("*Vyletel III*").[2] *Vyletel I* was dismissed on March 16, 2023, and on March 23, 2023, the undersigned issued a Report and Recommendation that *Vyletel III* be dismissed. For the reasons that follow, the instant case, *Vyletel II*, should also be dismissed.

**Background of *Vyletel I, II, and III***

*Vyletel I*

In its December 6, 2022 Report and Recommendation to dismiss *Vyletel I* (which recommendation was adopted over Vyletel's objections), the Court explained the underlying facts as follows:

> As of early 2019, Vyletel was a student member of UM's Formula Society of Engineers ("FSAE") team, which conducted automotive research.[3] Specifically, Vyletel alleges that he "held the role of Captain, Technical Lead, and Chassis Lead" on the team. [] Vyletel alleges that he had developed significant improvements to the team's vehicle, but that UM wanted him off the team so as to sabotage it. [] Specifically, Vyletel alleges, "With me off the team I wouldn't be able to present my work and the improvements I had made to the vehicle. The team would do worse and the car wouldn't have as much available grip which would result in longer lap times. [UM] would have had a lot of questions inquiring into how I alone improved a previously top 10 vehicle." [] *see also id.*, PageID.93 ("[UM] didn't want to answer how a student, being the most experienced member of the team (so without help), could have improved a previous top 10 vehicle."). Vyletel alleges that, on March 1, 2019, his "civil rights were violated and [he] was discriminated against" by UM when he was banned from the team and

---

[2] As in *Vyletel I*, in *Vyletel III*, Vyletel improperly named as defendants the Regents of the University of Michigan. (*Vyletel III*, ECF No. 29, PageID.296 n.1).

[3] Vyletel strongly objected to the characterization of the team's efforts as "research." (*Vyletel I*, ECF No. 35, PageID.338). While that dispute is irrelevant to the analysis of any of his cases, the Court will simply refer to the group of which Vyletel was a part as the "team."

>two UM-Dearborn laboratory buildings.[4] [] In his single-count amended complaint, Vyletel claims that these actions were the result of an unlawful conspiracy, in violation of 42 U.S.C. § 1985(3). As "relief," Vyletel seeks in excess of $39 million in "economic" and "compensatory" damages. []

(*Vyletel I*, ECF No. 32, PageID.322-23) (footnotes added).

The Court recommended dismissing Vyletel's complaint, finding that his Section 1985 conspiracy claim was barred by the Eleventh Amendment. (*Id.*, PageID.325-27). The Court also found that Vyletel's claim was barred by the applicable three-year statute of limitations because the ban was imposed no later than March 1, 2019, and he did not file his complaint until October 17, 2022. (*Id.*, PageID.326-27). Finally, the Court rejected Vyletel's argument that under the "continuing violation" doctrine, because the ban was an "ongoing event," the statute of limitations had not expired. (*Id.*, PageID.327-28 n.5). Specifically, the Court explained that "UM's alleged action – in banning Vyletel from campus buildings and the FSAE team on March 1, 2019 – is a discrete act that took effect on a particular day, which started the running of the statute of limitations. Thus, the continuing violation doctrine does not apply." (*Id.*).

Over Vyletel's objections, the Honorable Matthew F. Leitman adopted the Report and Recommendation. (*Vyletel I*, ECF No. 37). The adoption of the Eleventh Amendment immunity and general statute of limitations rulings was straightforward. (*Id.*, PageID.426-30). The only twist was Vyletel's argument that "he suffered a separate, additional injury that occurred on November 8, 2019, when the University sent him an email that

---

[4] Vyletel identified these two buildings as "IAVS" and "MSEL," and notes that they are two "University of Michigan-Dearborn ("UMD") buildings." (*Vyletel I*, ECF No. 10, PageID.86).

3

implemented 'a new ban (2nd ban) with different terms.'"[5] (*Id.*, PageID428-29). Judge Leitman rejected that argument, though, explaining, "the University did not take any new actions on November 8, but instead simply sent Vyletel an *email* referring **to the ban it instituted on March 1** and confirming that **that ban was still in place**. [] That email did not restart the limitations period." (*Id.*, PageID.429) (emphasis added).

### *Vyletel II*

On November 14, 2022 – before the Court entered its Report and Recommendation to dismiss *Vyletel I* – Vyletel filed his complaint in *Vyletel II*. (*Vyletel II*, ECF No. 1). In the operative amended complaint in that case, Vyletel raises essentially the same allegations he raised in *Vyletel I*, with two differences. First, the sole defendant named in *Vyletel II* is the University of Michigan-Dearborn ("UMD"). Second, Vyletel made clear that his claims grew out of the November 8 E-Mail. Specifically, although Vyletel recognized that the November 8 E-Mail merely notified him "that the suspension was still in effect," he characterized it as creating new harm, asserting that by banning him from the UMD buildings, he was "banned from using the machines within as well," which caused his grades and reputation to suffer. (*Id.*, ECF No. 6, PageID.69). Vyletel's claims in *Vyletel II* include: conspiracy to violate his First Amendment rights under 42 U.S.C. § 1985 (Count I); age discrimination in violation of 42 U.S.C. § 2000a (Count II); and conspiracy to commit age discrimination in violation of the Age Discrimination Act, 42 U.S.C. § 6102 and/or 42 U.S.C. § 2000d, under 42 U.S.C. § 1985 (Count III).

---

[5] The Court will refer to this e-mail as the "November 8 E-Mail."

On December 5, 2022 – the day before the Court issued its Report and Recommendation in *Vyletel I*, UMD filed a motion to dismiss *Vyletel II*, arguing that Vyletel's complaint in that second case is barred by the doctrine of "claim splitting." (*Vyletel II*, ECF No. 10). UMD relied principally on the case of *Church Joint Venture, L.P v. Blasingame*, 817 Fed. Appx. 142, 146 (6th Cir. 2020), for its holding that a plaintiff "must join all claims arising from the same set of facts in a single proceeding and cannot split them across multiple fora." (*Id.*, PageID.142). UMD noted in its motion that "the University of Michigan-Dearborn is an entity created by and subject to the bylaws of the University of Michigan Board of Regents," and that "the University of Michigan-Dearborn as an entity created by Regental bylaw and subject to the authority of the Regents is certainly in privity with the Board of Regents, the defendants in [*Vyletel I*]." (*Id.*, PageID.143). Briefing continued, and in its reply brief, which followed shortly after this Court's Report and Recommendation to dismiss *Vyletel I* as being barred by the Eleventh Amendment and statute of limitations, UMD argued, "In addition [to its claim-splitting argument], the claims are barred by the Eleventh amendment and statute of limitation for the same reasons argued in Vyletel I." (*Vyletel II*, ECF No. 14, PageID.205 n.2). Vyletel filed a sur-reply, and, while he continued to insist that "[t]he 2 suits [*Vyletel I* and *II*] involve 2 separate events and 2 separate parties," he did not contest UMD's argument that his claims in *Vyletel II* are barred by the Eleventh Amendment and statute of limitations. (*Vyletel II*, ECF No. 15, PageID.212). *Vyletel II* remains pending and UMD's motion to dismiss that action is the subject of this Report and Recommendation.

*Vyletel III*

On December 19, 2022, Vyletel filed *Vyletel III*. In the operative amended complaint in that case, Vyletel sued the University of Michigan-Dearborn and the Regents of the University of Michigan.[6] (*Vyletel III*, ECF No. 12). *Vyletel III* focused almost entirely on the November 8 E-Mail, characterizing it as "the 2nd ban," independent from the one imposed in March 2019. (*Id.*). He asserted that his removal from the team and his ban from certain UM buildings was the product of a "conspiracy" against him. He brought the bulk of his claims against UM under 42 U.S.C. §§ 1983 and 1985(3), but also asserted claims under 42 U.S.C. § 2000a, which prohibits public accommodations from discriminating "on the ground of race, color, religion, or national origin." Vyletel also asserted various state law tort claims.

On March 23, 2023, the Court issued a Report and Recommendation to grant UMD's motion to dismiss *Vyletel III*. (*Vyletel III*, ECF No. 29). The Court explained that Vyletel's claims under 42 U.S.C. §§ 1983 and 1985, as well as 42 U.S.C. § 2000a, are barred by the Eleventh Amendment (*id.*, PageID.300-02), and that his claims under § 1983, § 1985, and state law claims are barred by the three-year statute of limitations (*id.*, PageID.302-03). To that end, the Court explained that the alleged adverse impact of the ban on Vyletel's grades was not sufficient to invoke the "continuing violations" doctrine. (*Id.*, PageID.303 n.6). Additionally, because *Vyletel III* was based almost entirely on Vyletel's assertion that the November 8 E-Mail constituted a "2nd ban" that gave rise to

---

[6] Again, as the Court explained in *Vyletel I*, the University of Michigan and its Regents are one and the same. (*Vyletel I*, ECF No. 32, PageID.321 n.1).

new and distinct claims that accrued on November 8, 2019, the Court referred back to portions of Judge Leitman's order adopting the Report and Recommendation in *Vyletel I* which eviscerated that argument. Specifically, the Court noted Judge Leitman's rulings that "the University did not take any new actions on November 8, but instead simply sent Vyletel an email referring to the ban it instituted on March 1 and confirming that that ban was still in place. [] That email did not restart the limitations period." (*Id.*, PageID.304 n.5) (quoting *Vyletel I*, ECF No. 37, PageID.428-29). The Court also noted Judge Leitman's ruling that "Vyletel's removal from the FSAE team and his inability to access certain UM buildings – arose from a single alleged act, and that merely because 'the consequences of that single act may continue to impact Vyletel is not enough to invoke the continuing violation doctrine.'" (*Id.*, PageID.304 n.6) (quoting *Vyletel I*, ECF No. 37, PageID.429). Finally, the Court explained that "although Vyletel's claims are premised on his assertion that the '2nd ban' was imposed only by University of Michigan-Dearborn, UM has aptly explained the University of Michigan-Dearborn has 'no separate corporate identity from the Regents.'" (*Id.*, PageID.303 n.5) (citations omitted).

Thus, because *Vyletel III* was based on meritless arguments that the November 8 E-Mail constituted a "2nd ban" imposed by a legal entity separate from the one that imposed the initial March 2019 ban, and/or caused Vyletel to suffer harm distinct from the "consequences" of that original ban, the Court recommended dismissing the action as

having been untimely filed.[7]

Against this backdrop, the Court turns to a discussion of UMD's motion to dismiss *Vyletel II*.

**Discussion**

Although UMD principally argued in its motion to dismiss *Vyletel II* that the complaint in that case constituted impermissible "claim splitting," the Court declines to address that issue because, as UMD argued in its reply brief, Vyletel's claims are barred by the Eleventh Amendment and/or statute of limitations.[8] (*Vyletel II*, ECF No. 14, PageID.205 n.2).

This Court has already explained that, like the University of Michigan, "[UMD] has 'no separate corporate identity from the Regents.'" (*See* supra at 7; *Vyletel III*, ECF No. 29, PageID.303 n.5). Thus, at least to the extent Vyletel reiterates the same § 1985 conspiracy claims in this case as he did in *Vyletel I* and/or *III*, the Eleventh Amendment analysis that required dismissal in those cases applies with equal force to his conspiracy claims against UMD in *Vyletel II*. And, even if Vyletel could show that Eleventh Amendment immunity has been abrogated with respect to his other claims under 42 U.S.C.

---

[7] The Court also explained that Vyletel's claim under 42 U.S.C. § 2000a failed as a matter of law because that statute prohibits public accommodations from discriminating "on the ground of race, color, religion, or national origin," 42 U.S.C. § 2000a(a), but Vyletel based his § 2000a claim on alleged age discrimination. (*Id.*, PageID.302 n.4).

[8] While a litigant typically may not raise new arguments in a reply brief, Vyletel filed a sur-reply, and thus had the opportunity to address UMD's arguments. Moreover, these cases all present the same basic facts and legal issues, and both parties thoroughly briefed their respective positions on the Eleventh Amendment and statute of limitations issues in the other two cases. There is simply no prejudice to Vyletel by the Court's consideration of these issues as they relate to *Vyletel II*.

§ 6102 and/or 42 U.S.C. § 2000d, *see e.g.*, *McVicker v. Hartfield*, No. 2:08-CV-1110, 2009 WL 2431257, at *10 (S.D. Ohio Aug. 6, 2009) (noting that Congress abrogated Eleventh Amendment immunity with respect to certain claims brought under 42 U.S.C. § 6102 and 42 U.S.C. § 2000d), those claims are still subject to dismissal because they were filed beyond the applicable statute of limitations period. Here, because neither statute provides its own statute of limitations, the Court must look to "the most appropriate one provided by state law." *See Simmons v. Middle Tennessee State Univ.*, 117 F.3d 1421 (6th Cir. 1997).[9] As with the claims at issue in *Vyletel I* and *III*, the claims at issue here are akin to ones alleging a violation of Vyletel's civil rights. And, "[i]n Michigan, civil rights actions are subject to a three-year statute of limitations." *Haines v. Fed. Motor Carrier Safety Admin.*, No. 15-1624, 2016 WL 659180 (6th Cir. Feb. 18, 2016); *see also* Mich. Comp. Laws § 600.5805(2).

For all of the reasons discussed in *Vyletel I* and *III*, *see supra* at 2-4, 6-8, Vyletel's claims in this case all accrued in March 2019, when he was first dismissed from the team and banned from the buildings, and the November 8 E-Mail that is at the heart of the allegations in *Vyletel II* did not give rise to a new claim. Similarly, Vyletel's allegation in *Vyletel II* that his grades suffered as a consequence does not give rise to a new claim or allow him to invoke the continuing violation doctrine. *See supra* at 7. Because Vyletel filed his complaint in this case in November 2022 – well more than three years after his

---

[9] The Court applied this principle in *Vyletel I*, noting the need to look to "the most analogous state statute of limitations," which in that case was the statute of limitations for personal injury actions, i.e., three years. (*Vyletel I*, ECF No. 32, PageID.327).

9

claims accrued – they are subject to dismissal.

**Conclusion**

For the reasons set forth above, **IT IS RECOMMENDED** that UMD's Motion to Dismiss **(ECF No. 10)** be **GRANTED**.

Dated: March 31, 2023  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir.1981). The filing of objections that raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address

specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2023.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager